UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| EMCASCO INSURANCE COMPANY, an Iowa corporation; EMPLOYERS MUTUAL CASUALTY COMPANY, an Iowa corporation; and GREAT AMERICAN INSURANCE COMPANY, an Ohio corporation<br><br>      Plaintiffs,<br><br>  v.<br><br>JAMES CARTWRIGHT, an individual and as the appointed guardian ad litem for MATTHEW BARBEE; SHERRIE UTLEY-BARBEE, an individual; and DARBY McBRIDE, an individual; and NATIONWIDE INSURANCE COMPANY, an Ohio corporation,<br><br>      Defendants. | Case No.: 03:20-cv-00953-AC<br><br>OPINION AND ORDER |

ACOSTA, Magistrate Judge:[1]

---

[1] The parties have consented to jurisdiction by magistrate judge, pursuant to 28 U.S.C. § 636.

PAGE 1 - OPINION AND ORDER

*Introduction*

EMCASCO Insurance Company, Employers Mutual Casualty Company ("EMC"), and Great American Insurance Company (collectively "Plaintiffs") bring this declaratory judgment action against Defendants James Cartwright, Sherrie Utley-Barbee, Darby McBride ("McBride"), and Nationwide Insurance Company ("Nationwide") seeking a declaration that Plaintiffs have no duty to defend or indemnify McBride in the underlying lawsuit.2  Currently before the court are Plaintiffs' motion for summary judgment and Defendants' cross-motion for summary judgment. Plaintiffs' motion is granted and Defendants' motion is denied.

*Background*

The following facts are undisputed unless noted.  At all relevant times McBride, a resident of Banks, Oregon, was employed as a service technician by Russ Auto, Incorporated ("Russ Auto") in its Beaverton dealership. (JSAF at ¶¶ 6-7.)  At all relevant times Russ Auto had the following liability insurance policies:

1. a Commercial Auto policy with EMCASCO Insurance Company ("EMCASCO") policy number 5R3-26-09-18 ("the EMCASCO Policy");

2. a Commercial Umbrella policy with Employers Mutual Casualty Company ("EMC"), policy number 5J3-26-09-18 ("the EMC Policy"); and

3. an Excess Liability policy with Great American Insurance Company ("Great American"), policy number TUE 4-29-74-17-02 ("the Great American Policy").

*(Id.* at ¶ 2.)

---

2 Nationwide is McBride's personal automobile insurer and is providing a defense to [McBride] in the underlying lawsuit.  (Joint Statement of Agreed Facts, ECF No. 63 ("JSAF"), at ¶ 14.)

PAGE 2 - OPINION AND ORDER

On December 13, 2017, McBride worked from 7:00 a.m. to 4:30 p.m. at the Russ Auto dealership in Beaverton, Oregon. (*Id*. at ¶ 7.)

On December 13, 2017, Russ Auto hosted a holiday party at Big Al's restaurant and bar in Beaverton, Oregon from 8:00 p.m. to 11:00 p.m. (*Id*. at ¶ 8.) Russ Auto did not require its employees to attend the holiday party. (*Id*.) McBride, however, "viewed the holiday party at Big Al's as a work event and believed it was an opportunity to meet and network with other Russ Auto employees." (*Id*. at 11.) McBride, therefore, attended the holiday party, and he drove himself and a co-worker to the party, arriving at approximately 8:00 p.m. (*Id*. at 10.) Russ Auto provided party attendees with food, two drink tickets, and bonus checks. (*Id*. at ¶ 13.)

McBride stated that "[t]owards the end of the party," Russ Auto Human Resources Director Tanya Hellerstedt told him that "[t]he party is continuing at the Brickyard Tavern. I hope to see you there." (Decl. of Vicki Smith, ECF No. 65 ("Smith Decl."), Ex. 3 at 5.) He went to the Brickyard Tavern where he saw "a couple dozen" Russ Auto employees. (Decl. of Travis Eiva, ECF No. 69 ("Eiva Decl."), Ex. 5 at 20.) Russ Auto, however, did not provide food or drinks at Brickyard Tavern. (*Id*. at 29.) McBride purchased a drink and stayed "a couple of hours." (*Id*. at 20.) After he left the Brickyard Tavern, he stopped and purchased food at a Taco Bell at 12:57 a.m. on December 14, 2017. (*Id*., Ex. 8.) McBride ate the food and took a nap in his car before he began driving home to Banks, Oregon.

At some point before 1:24 a.m. on December 14, 2017, Matthew Barbee ("Barbee") was driving on Highway 26 and got a flat tire. (JSAF at ¶ 16.) Barbee pulled off the road and waited in his vehicle for a tow truck to arrive. (*Id*.) At 1:24 a.m., McBride was driving westbound on highway 26 when his vehicle left the lane of travel and struck Barbee's vehicle waiting on the side of the road. (*Id*.) Barbee suffered "serious and permanent bodily injuries." (*Id*.)

PAGE 3 - OPINION AND ORDER

On June 25, 2019, Barbee, through his appointed guardian at the time, Sherrie Utley-Barbee[3] ("Utley-Barbee") filed an action against Russ Auto and McBride in Washington County Circuit Court ("the underlying lawsuit").  Ultimately, McBride "admitted allegations of negligence and partial allegations of partial damages in his Answer to the amended complaint. The parties then stipulated to a judgment against [McBride] . . . for $33,000,000." (JSAF at ¶ 17.)  Cartwright and Utley-Barbee have settled their claims against Russ Auto.

On June 9, 2020, McBride tendered the underlying lawsuit to EMCASCO and EMC[4] and "asked for defense and indemnity under the Auto Policy and the Umbrella Policy." (Am. Compl., ECF No. 5, at ¶ 14.)

On June 12, 2020, EMCASCO and EMC declined McBride's tender on the basis that their policies provide that Russ Auto's employees are insureds only when the employees are "using a covered 'auto' you do not own, hire or borrow in your business or personal affairs" and, according to Plaintiffs, at the time of the accident McBride was not using his auto in the business or personal affairs of Russ Auto.  (*Id*. at ¶ 15.)

On June 12, 2020, Plaintiffs filed a declaratory judgment action in this court seeking a declaration that EMCASCO and EMC do not have a duty to defend or indemnify McBride in the underlying lawsuit.  On August 17, 2020, Plaintiffs filed an Amended Complaint in which they add Great American Insurance Company as a plaintiff and seek a declaration that EMCASCO, EMC, and Great American Insurance Company do not have a duty to defend or indemnity McBride

---

[3] At some point James Cartwright ("Cartwright") was substituted as Barbee's guardian.

[4] In their Amended Complaint, Plaintiffs note although "McBride never tendered the Underlying Lawsuit to Great American, Great American has become aware of the action" and asserts its umbrella policy does not afford coverage to McBride.  (Am. Compl. at ¶ 17.)

in the underlying lawsuit.

Plaintiffs now move for summary judgment on the basis that McBride was not an insured under any of their insurance policies at the time of the accident. Defendants move for summary judgment on the basis that McBride was an insured under all of the policies at the time of the accident.

*Legal Standard*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id*. at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v.*

PAGE 5 - OPINION AND ORDER

*Wiens*, 533 F.2d 429, 432 (9th Cir. 1976).  Where different ultimate inferences may be drawn, summary judgment is inappropriate.  *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits.  The nonmoving party must set forth "specific facts showing a *genuine* issue for trial."  FED. R. CIV. P. 56(e) (emphasis added).  The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

*Discussion*

I.   Insurance Contract Interpretation

Under Oregon law the construction of a contract is a question of law for the court. *Holloway v. Republic Indem. Co. of Am.*, 341 Or. 642, 649 (2006)(citing *Hoffman Const. Co. of Alaska v. Fred S. James & Co. of Ore.*, 313 Or. 464, 470 (1992)).   The court's task is to "ascertain the intention of the parties to the insurance policy."   *Id*. at 649-50 (citing Or. Rev. Stat. § 742.016).   The court accomplishes this task "based on the terms and conditions of the insurance policy."   *Id*.

Generally when "evaluating whether an insurer has a duty to defend[,] the court looks only at the facts alleged in the complaint" and the terms of the policy.  *Ledford v. Gutoski*, 319 Or. 397, 400 (1994).   See also *Nat'l Union Fire Ins. Co. of Pittsburgh v. Starplex Corp.*, 220 Or. App. 560, 573 (2008)("[w]hether an insurer has a duty to defend an action against its insured depends on two documents:   the complaint and the insurance policy.").   A narrow exception to this rule

PAGE 6 - OPINION AND ORDER

exists, however, "'in instances when courts are attempting to determine whether an organization or individual was an insured under a policy'" and it is not possible to do so using only the complaint in the underlying lawsuit and the policy. *State Farm Fire & Cas. Co. v. Evans Constr. & Siding Corp.*, No. 3:19-CV-00972-BR, 2019 WL 4723783, at *3 (D. Or. Sept. 26, 2019)(quoting *Clarendon Am. Ins. Co. v. State Farm Fire & Cas. Co.*, No. 3:11-cv-01344-BR, 2013 WL 54032, at *6 (D. Or. Jan. 3, 2013)).

The duty to indemnify "is independent of the duty to defend." *Ledford*, 319 Or. at 403 (citation omitted). "Even when an insurer does not have a duty to defend based on the allegations in the initial complaint, the facts proved at trial on which liability is established may give rise to a duty to indemnify if the insured's conduct is covered." *Id.* (citation omitted). "In order for summary judgment to be appropriate on the duty to indemnify, there must be no genuine issue of material fact, and the moving party must be entitled to judgment as a matter of law." *Id.* (citations omitted).

Under Oregon law when "an insurance policy explicitly defines the phrase in question, [the Court] appl[ies] that definition." *Holloway,* 341 Or. at 650. See also *Joseph Educ. Ass'n v. Joseph Sch. Dist. No. 6*, 180 Or. App. 461, 467 (2002).

> If the policy does not define the phrase in question, [the court] resort[s] to various aids of interpretation to discern the parties' intended meaning. Under that interpretive framework, we first consider whether the phrase in question has a plain meaning, *i.e.*, whether it is susceptible to only one plausible interpretation. If the phrase in question has a plain meaning, we will apply that meaning and conduct no further analysis. If the phrase in question has more than one plausible interpretation, we will proceed to the second interpretive aid. That is, we examine the phrase in light of the particular context in which that [phrase] is used in the policy and the broader context of the policy as a whole. If the ambiguity remains after the court has engaged in those analytical exercises, then any reasonable doubt as to the intended meaning of such [a] term[] will be resolved against the insurance company. However, . . . a term is ambiguous . . . only if two or

>     more plausible interpretations of that term withstand scrutiny, *i.e.*, continue[] to be reasonable despite our resort to the interpretive aids outlined above.

*Id.* (quotation omitted).

II.   Policy Language

EMCASCO policy provides:

> **D.   Covered Autos Liability Coverage**
>
> **1.   Coverage**
>
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos".

(Smith Decl., Ex. 1A, p. 22.)   The EMCASCO policy defines "covered auto" by reference to "numerical symbols [that] describe the 'autos' that may be covered 'autos.'"   (*Id.* at 21.) Specifically, "[t]he symbols entered next to a coverage on the Declarations [page] designate the only 'autos' that are covered 'autos.'"   (*Id.*)   On the Declarations page of Ross Auto's policy "covered autos" are designated under symbol 21.   (*Id.* at 2)   The policy describes symbol 21 as "any auto."   (*Id.* at 21.)   "Insured" is defined in relevant part as:   "Your 'employee' while using a covered 'auto' you do not own, hire or borrow in your business or your personal affairs."   (*Id.* at 23.)   The EMC and Great American policies provide excess coverage that relies on the same definition of "insured" as the EMCASCO policy.   The parties agree there are not any existing disputes of material fact and that the question at issue is purely legal:   whether McBride was an insured under Plaintiffs' policies at the time of the accident.

III.   Analysis

PAGE 8 - OPINION AND ORDER

The parties agree that for McBride to qualify as an insured under the policies he must establish: 1) he was an employee of Russ Auto at the time of the accident; 2) he was driving an automobile; 3) Russ Auto did not own, hire, or borrow the automobile; and 4) McBride was "using" the automobile "in" the "business or [ ] personal affairs" of Russ Auto. For purposes of the parties' motions for summary judgment Plaintiffs do not dispute that McBride has established the first three items. The parties also agree that it is not possible to determine from the policies and the complaint in the underlying lawsuit whether McBride is an insured under Plaintiffs' policies and, therefore, it is appropriate for the court to consider extrinsic evidence.

A.   Plain Meaning

Because the policies do not define the terms "business" or "personal affairs", the Court must determine whether that term has a plain meaning., *"i.e.*, whether it is susceptible to only one plausible interpretation." *Holloway,* 341 Or. at 650. Plaintiffs assert the word "using" is defined as "to put into action or service:   to have recourse to or enjoyment of" or "to carry out a purpose or action by means of." (Pls.' Mot. for Summ. J., ECF No. 64, at 9 (quoting *Webster's Third New Int'l Dictionary* at 2523-24 (1976 ed.)) Plaintiffs assert "in" is "a function word to indicate location or position in space or in some materially bounded object." (*Id*. (quoting *Webster's Third New Int'l Dictionary* at 1139.)) According to Plaintiffs, therefore, the phrase "using a covered auto . . . in [Russ Auto's] business or . . . personal affairs" means an employee is driving an automobile to carry out a purpose of Russ Auto at the time of the incident. Plaintiffs contend the policies do not cover an employee using an automobile for his own purposes at the time of the accident.

Plaintiffs note there is not any Ninth Circuit case on point and few cases that discuss who is an insured under the policy provision at issue here, but assert their position is supported by the

PAGE 9 - OPINION AND ORDER

unpublished decision in *Jeffries v. Aetna Casualty and Surety Company*, No. CA-98-608-5-F (E.D.N.C. Aug. 25, 1999), *aff'd* 211 F.3d 1265 (4th Cir. 2000). (Smith Decl., Ex. 4.) In *Jeffries* Aetna Casualty and Surety Company ("Aetna") issued a business auto insurance policy to the News and Observer Publishing Company ("NOPC") that included the following: "Any employee of yours is an 'insured' while using a covered 'auto' you don't own, hire, or borrow in your business or personal affairs." (Smith Decl., Ex. 4 at 2.) Jeffries was employed as a reporter by NOPC, which held a retirement party planned by NOPC's president. NOPC's Board of Directors sent the party invitations to guests "almost all of whom were employed by or otherwise associated with" NOPC. *Id*. The party was held at the home of NOPC's president and NOPC paid all of the party expenses including food, wine, beer, liquor, and decorations. Jeffries received an invitation to the party but was not required to attend, was not compensated for the time he spent at the party, and did not perform any of his usual job functions while at the party. Jeffries consumed "three or four" alcoholic beverages "in the span of a few hours" while he was at the party. *Id*. at 3. Jeffries left the party around 10:00 p.m., and began driving home in his vehicle. Jeffries did not stop anywhere after he left the party. On his drive home Jeffries collided with an automobile driven by Caleb Camalier, causing Camalier to sustain serious injuries.

Jeffries was charged with driving while impaired and failing to stop for a red light, and he entered a guilty plea to both charges. Camalier's family filed suit against Jeffries, NOPC, and NOPC's president related to the accident. Jeffries requested that Aetna provide him with a defense in the underlying lawsuit and Aetna filed a declaratory-judgment action seeking a declaration that Jeffries was not an insured under the policy, because he was not using his vehicle "in [NOPC's] business or . . . personal affairs" at the time of the accident. *Id*. at 6.

The court noted as an initial matter that the phrase "course and scope of employment" did

not appear in the policy provision at issue and, therefore, that the "language [of the provision] means something more or different than whether Jeffries was acting within the course and scope of his employment as that phrase is used in *respondeat superior* law." *Id*. at 8. Ultimately, the court concluded the provision was not ambiguous. Specifically, the court found the phrase "using . . . [an auto] *in* [an employer's] business . . . or personal affairs" means using the auto to *further* or *pursue* the employer's business or personal affairs." *Id*. at 9 (emphasis in original). "In other words, the ordinary language of the [provision] means that in order to be an insured under the [provision], an employee of the [NOPC] must be using an auto to further or pursue the [NOPC's] affairs." *Id*. The court concluded the phrase "'using . . . in' is much narrower than the two phrases 'using in connection with' or 'arising out of' an employer's business or personal affairs which both connote merely a broad causal connection." *Id*. The court offered the following examples of furthering or pursuing NOPC's business under this narrower meaning as "activities that aid or benefit the N&O in some fashion":

> [A]n employee-reporter . . . driv[es] to and from a town council meeting in order to report on it. An employee-reporter . . . driv[es] to get ice for guests at an [NOPC] social function the expense of which [NOPC] is deducting from its corporate taxes because the function was an "ordinary and necessary" business expense. . . . [A]n employee-reporter . . . shuttl[es] guests in his personal automobile to and from the parking lot and site of such a party.

*Id*. at 9. Applying the interpretation of the provision at issue the court concluded Jeffries was not an insured under the Aetna policy because he was not "'using' his automobile '*in*' [NOPC's] personal affairs." *Id*. at 10 (emphasis in original). Specifically,

> the undisputed facts in this matter demonstrate that Jeffries was "using" his automobile in his own personal affairs. Jeffries was a guest at a party which he voluntarily chose to attend. He voluntarily chose to consume alcohol, eat and socialize with friends at that party. He was not acting in his capacity as a reporter at the party. He was not furthering or pursuing [NOPC's] efforts to hold the party - *e.g*., he was not driving to get ice for the party or driving to bring other

PAGE 11 - OPINION AND ORDER

> guests to and from the party. Furthermore, he voluntarily chose to drive home after attending the party and was not furthering or pursuing [NOPC's] personal affairs in so doing. Simply stated, Jeffries was driving on a personal mission to attend a social function and return home therefrom, and was not doing so "in" [NOPC's] personal affairs.

*Id*.

Similarly, in *Burke v. Thibodeaux*, the court found an endorsement that read "[a]ny employee of yours is an 'insured' while using a covered 'auto' you don't own, hire, or borrow in your business or your personal affairs" was unambiguous. 726 So. 2d 65, 67 (5th Cir. Dec. 16, 1998). The court concluded that endorsement meant "that the employee is covered by the . . . policy when he/she is driving a non-owned (hired or borrowed) auto while in the pursuit of [the company's] business or personal affairs." *Id.* Here, the court concludes Plaintiffs have established that their proposed interpretation of the phrase, that an insured is an employee driving an automobile to carry out a purpose of Russ Auto at the time of the incident, is a plausible definition of the phrase.

Defendants, however, assert that their proposed interpretation is the only plausible interpretation or, in the alternative, that their proposed interpretation is also plausible and, therefore, the phrase does not have a "plain meaning", and thus the court must examine the phrase in light of the broader context of the policy as a whole. Defendants assert "personal" is defined to include "of or relating to a particular person; affecting one individual or each of many individuals; peculiar or proper to private concerns; not public or general." *Webster's Third New Int'l Dictionary* at 302. "Affairs" is defined to mean "matter [or] concern." *Id*. at 35. According to Defendants, these definitions, when taken together, "support an interpretation of the term 'personal affairs' to mean matters or concerns of or relating to" Russ Auto. (Defs.' Mot. for Summ. J., ECF No. 68, at 13.)

PAGE 12 - OPINION AND ORDER

Defendants further assert that the term "personal affairs" used in the disjunctive with the term "business" indicates "these matters and concerns should not be limited to, and in fact may be necessarily exclusive of matters that further the company's 'business.'" (*Id*.)  Defendants assert the holiday party was both a business and a personal affair of Russ Auto; therefore, they contend, coverage turns on whether McBride was using the vehicle "'in' the above affairs."[5] (*Id*. at 14.) Defendants disagree with Plaintiffs' assertion that the dictionary definition of "in" must "indicate location or position in space or in some materially bounded object."  *Webster's Third New Int'l Dictionary* at 1139.  Defendants point out that in *Powell v. Bunn*, 198 Or. App. 21 (2005), *rev'd on other grounds* 341 Or. 306 (2006), the court interpreted the meaning of the word "in" as used in ORS § 659.850(2)[6] more broadly than the definition urged by Plaintiffs here.  Specifically, the court noted the definition of "in" found in *Webster's Third New International Dictionary* provides "in" can also be used "to 'indicate close connection by way of implication or active participation.'" *Powell*, 198 Or. App. at 41 (quoting *Webster's Third New Int'l Dictionary* at 1139.)

Defendants conclude that applying the definition of "in" set out in *Powell* indicates coverage "turns on whether [McBride] was using the vehicle to transport persons or things in connection with or due to the course of the affair." (Defs.'s Mot. for Summ. J. at 16.)  The definition of "in" set out in and applied by the court in *Powell*, however, does not suggest a "but for" or "due to" level of connection is sufficient.  As noted, the *Powell* court defined "in" to indicate a *close* connection.  Thus, even pursuant to the definition used in *Powell,* coverage here

---

[5] The indeterminate phrasing makes it not entirely clear, but it appears "the above affairs" refers to Russ Auto's holiday party.

[6] Oregon Revised Statute § 659.850(2)(2005) provided in pertinent part:  "No person in Oregon shall be subjected to discrimination in any . . . school . . . activity."

PAGE 13 - OPINION AND ORDER

would turn on whether McBride was using his vehicle in close connection with Russ Auto's holiday party at the time of the accident.

Defendants also rely on *Ureta v. Thompson*, 892 F.2d 426 (5th Cir. 1990), to support their interpretation of the phrase at issue. In *Ureta*, Segismundo Ureta ("Ureta") was driving his own vehicle to a birthday party that he was attending in order to "develop patient referrals" when Matthew Browne's vehicle struck Ureta's vehicle and killed him. Ureta's wife ("the plaintiff") brought a wrongful death action against a number of parties including United States Fidelity & Guaranty Company ("USFG"). The plaintiff alleged Ureta was covered by an insurance policy issued to the Browne-Hardy Clinic, a partnership of medical professionals. Ureta was not an individual partner of Browne-Hardy, but "Segismundo Z. Ureta A Professional Medical Corporation" ("UAPMC") was a partner in Browne-Hardy and Ureta was an employee of UAPMC. The plaintiff asserted, among other things, that at the time of the accident Ureta was covered under the "non-owned autos section" of the USFG policy that provided coverage for "those autos [Browne–McHardy] do[es] not own, lease, hire, or borrow which are used in connection with [Browne–McHardy's] business. This includes autos owned by [Browne–McHardy] employees or members of their households but only while used in [Browne–McHardy's] business or personal affairs." *Id.* at 429. The court concluded the non-owned autos provision meant that if Ureta "was to attend the party in connection with Browne–McHardy business, then the car would be a covered vehicle at the time of the accident." *Id.*

*Ureta,* however, is distinguishable because the language of the policy in *Ureta* specifically included the statement that the auto was used "in connection with" the company's business, whereas the policy provision here does not include the phrase "in connection with." The policy

PAGE 14 - OPINION AND ORDER

here requires the auto to be used "in [Russ Auto's] business or . . . personal affairs."  In addition, in *Ureta,* unlike in this case, Ureta did not proceed from the party that he arguably was going to attend for "a purpose in connection with the company's business", to an entirely different gathering that was indisputably not sponsored by the company nor did he then proceed to a third location – buying and eating food, then sleeping in his car before venturing out – for a purpose that was entirely personal before he was involved in the accident.  At most *Ureta* suggests an individual who uses his own vehicle to attend a party in close connection with a company's business purpose might be covered under a policy that contains language different from that at issue here.

Although it is a close question, the court concludes that to the extent Defendants urge a definition of the provision at issue that requires Defendants to show that McBride was using his "vehicle in close connection with" Russ Auto's holiday party, that definition is a second plausible interpretation of the provision.

B.  Policy Context

Because the court has concluded the provision at issue does not have a clear "plain meaning," the court must examine the provision in the broader context of the policy as a whole to determine its meaning.  See *Bighorn Logging Corp. v. Truck Ins. Exch.,* 295 Or. App. 819, 829 (2019)("If there is more than one plausible interpretation, we examine the word or phrase in the context in which it is used in the policy and the broader context of the policy as a whole.").

Plaintiffs point out that the provision at issue specifies an employee must be using his auto "in [Russ Auto's] business or . . . personal affairs."  The provision does not include the phrase "arising out of" or "in connection with."  Plaintiffs assert if they had intended the provision at issue to apply in connection with or arising out of an employee's use of a covered automobile, they would have included that language in the provision, as they did in other areas of their insurance

policies. For example, the EMCASCO policy uses the phrase "in connection with" several times in provisions other than the one at issue. (*See, e.g.,* Smith Decl., Ex. 1A at Section I ¶¶ D(4)(d)(2)(b), D(4)(m); Section II ¶¶ A(2)(f)(1)(c)(ii), A(2)(f)(1)(d), A(2)(i); Section V ¶¶ B(1)-(4), N(3)-(5))  The EMC policy also uses the phrase "in connection with" several times in provisions other than the one at issue. (*See,.e.g.,* Smith Decl., Ex. 1B at Section I ¶¶ A(2)(g)(2), A(2)(s)(8), B(15)(h); Supplementary Payments ¶ 3(f)(1)(b); Section IV ¶ 3(c)(1); Section 5 ¶¶ 9(c)-(d), (g), 27(a)(2), 28(a)(2).  In addition, the EMCASCO policy uses the phrase "arising out of" numerous times in provisions other than the one at issue. (*See, e.g.,* Smith Decl., Ex. 1A at Section I ¶¶ D(4)(d)(1), D(4)(e)(1), D(4)(h), D(4)(p), D(4)(q); Section II ¶¶ A(2)(d)(1), A(2)(d)(3), A(2)(f)(1)-(2), A(2)(g), A(2)(l), A(2)(m), A(2)(n), B(1), B(2)(b)-(d), B(2)(f)-(q), D(5)(a)(4), D(6)(b)(2), F(1)(a)(1)(b), F(1)(b)(2); Section III ¶¶  A, B(1), B(3), B(6)-(9); Section IV ¶¶   B(5)(e)(2), B(7)(c); Section V ¶¶ B(1)-(2), B(4), G, N(7)(a), N(7)(e), R.)  These examples indicate that both EMCASCO and EMC explicitly use the terms "in connection with" and "arising from" when they intend those terms to be applicable, and that individuals purchasing EMCASCO and EMC policies also understand those terms explicitly apply only when they are used and do not apply when they are not used.

In addition, EMCASCO offers different non-owned auto coverage depending on how the term "covered auto" is defined in the policy a company purchases. For example, as noted, the EMCASCO policy purchased by Russ Auto defines a "covered auto" for purposes of the policy as "any auto." (Smith Decl., Ex. 1A at 2, 21.)  EMCASCO, however, also offers coverage for "non-owned 'autos'" that is defined as:

> Any "auto" you do not own, lease, hire, rent or borrow used *in connection with* your "auto" dealership described in the Declarations. This includes "autos" owned by your "employees" or partners (if you are a partnership), members (if you are a

>limited liability company) or members of their households while used in your "auto" dealership.

*Id*. at 2 (emphasis added.)   That EMCASCO defined one category of covered autos as "any auto" and another as autos "used in connection with" the company purchasing the policy indicates the intended coverage was different under those different provisions.   These differences suggest the phrase "in connection with" is not what EMCASCO intended to cover nor is it the coverage Russ Auto intended to purchase.   See *Holloway,* 341 Or. 649-50 (the court's task is to "ascertain the intention of the parties to the insurance policy")(citation omitted).

The court concludes on this record that within the broader context of the policies as a whole, the meaning of the phrase "using a covered 'auto' . . . in your business or your personal affairs" is that urged by Plaintiffs:   using a covered automobile to carry out a purpose of Russ Auto or while in the pursuit of Russ Auto's business or personal affairs.   The court also finds that even if this interpretation encompassed McBride's attendance and departure from the holiday party (which is debatable, given the voluntary nature of the holiday party), it does not encompass McBride's trip to the Brickyard Tavern or to Taco Bell.   The record supports this interpretation.   McBride testified at deposition that he was not "on the clock" or "required to do anything for [Russ Auto]" at the time he went to Taco Bell.   (Smith Decl., Ex. 3 at 11.)   McBride "could have gone anywhere [he] wanted" after he left the Brickyard Tavern."   (*Id*.)   McBride went to Taco Bell because "he was hungry," and because "it was near the Brickyard Tavern and it was on [his] way home."   (*Id*. at 11-12.)   McBride did not engage in any functions of his job or assist Russ Auto in any way when he went to the Brickyard Tavern, or when he left the Brickyard Tavern to go to Taco Bell, buy and eat food, and then sleep in its parking lot.   On this record, the court concludes McBride was not an insured under the policies at issue at the time of the accident because he was

PAGE 17 - OPINION AND ORDER

not using his automobile in the business or personal affairs of Russ Auto at that time.

The court notes even under Defendants' suggested interpretation of the provision at issue McBride would not have been an insured at the time of the accident. Defendants assert employees were required to use their own vehicles to go to the holiday party, and at the time of the collision McBride was driving himself home. (Defs.' Mot. for Summ. J. at 17.) As noted, however, the party was voluntary as was McBride's decision to attend the party and to drive himself. Defendants also contend the fact that McBride went to the Brickyard Tavern after the holiday party does not affect coverage because the Brickyard Tavern get-together was "in a close connection to and part of the course of" the holiday party. (*Id*. at 25.) Defendants also assert the fact that McBride went to Taco Bell after the Brickyard Tavern does not mean McBride was not using his vehicle in connection with his attendance at the holiday party because "his presence at Taco Bell for a bite to eat , and a brief . . . nap, . . . was wholly due to the course of events of the company affair." (*Id*. at 26.)

Defendants' argument particularly as to McBride's stop at Taco Bell, however, ignores the *Powell* court's use of the word "close" to modify "connection." *Powell*, 198 Or. App. at 41 ("in" can also be used to "'indicate[s] *close* connection by way of implication or active participation.'" (quoting *Webster's Third New Int'l Dictionary* at 1139)(emphasis added.)). McBride went to Taco Bell nearly two hours after Russ Auto's party ended and, as noted, he testified at deposition that when he did so he was not "on the clock" or "required to do anything for [Russ Auto]" at the time he went to Taco Bell. (Smith Decl., Ex. 3 at 11.) McBride "could have gone anywhere [he] wanted after he left the Brickyard Tavern." (*Id*.) McBride went to Taco Bell because "he was hungry," and "it was near the Brickyard Tavern and it was on [his] way home." (*Id*. at 11-

12.) The record does not support an inference that McBride's trip to Taco Bell was closely connected to Russ Auto's business or personal affairs. Defendants' argument that McBride's trip to Taco Bell was "wholly due to the course of events of the company affair" does not apply the standard Defendants urge the court to adopt, but instead is closer to a "but for" standard which is not supported by any of the authorities cited by Defendants or the policies as a whole.

Accordingly, the court adopts Plaintiffs' proposed interpretation of the provision at issue and concludes McBride was not an insured within the meaning of the policies at the time of the accident. The court therefore grants Plaintiffs' motion for summary judgment and denies Defendants' motion for summary judgment.

## Conclusion

For the reasons stated above, Plaintiffs' motion for summary judgment (ECF No. 64) is GRANTED and Defendants' cross-motion for summary judgment (ECF No. 68) is DENIED.

DATED this 17th day of November, 2021.

JOHN V. ACOSTA
United States Magistrate Judge